**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-20505-Civ-SCOLA/TORRES

BRENDA DE JESUS ALLI,

       Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
Social Security Administration,

       Defendant.

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'
CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment filed by Brenda De Jesus Alli ("Plaintiff") [D.E. 20] and Andrew Saul, Acting Commissioner of Social Security Administration ("Defendant") [D.E. 21] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching an unfavorable decision.[1]   Even under the limited standard of review that governs this case, the Court finds that substantial evidence does not fully support the ALJ's determination.   Therefore, Plaintiff's motion for summary judgment [D.E. 20] should be **GRANTED**, Defendant's motion for summary judgment [D.E. 21] should be **DENIED**, and this case should be **REMANDED**.

_____

[1]   On February 8, 2018, the Honorable Robert N. Scola referred the parties' cross-motions to the undersigned Magistrate Judge for disposition.   [D.E. 2].

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on December 13, 1970.  She has a high school diploma, one year of college education, and prior work experience as a medical coder.  On October 8, 2014, Plaintiff filed an application for disability insurance benefits because she suffers from migraine headaches, depression, bipolar disorder, and rheumatoid arthritis.  The Social Security Agency denied Plaintiff's applications at the initial and reconsideration levels.  Plaintiff then requested a hearing before an ALJ[2] that took place on March 8, 2017.

After considering the record and the testimony of a vocational expert[3] ("VE"), the ALJ issued an unfavorable decision on April 28, 2017 and concluded that Plaintiff was not disabled.  The ALJ found at step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since July 24, 2014 – the alleged onset date of disability.  At step two, the ALJ determined that Plaintiff's migraines constituted a severe impairment because they caused more than a minimal limitation on the claimant's mental abilities to do basic work.  The ALJ then concluded at step three that Plaintiff did not have an impairment that met or medically equaled a listed impairment.  As part of this analysis, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary

---

[2]     The ALJ in this case was Rebecca Wolfe.

[3]     The VE in this case was Jennifer Guediri.   A VE is a specialist in employment and vocational factors that influence employment.   An ALJ may rely on a VE's testimony for finding that a claimant can return to prior employment or find work in the national economy.

work.   The ALJ noted, however, that Plaintiff could not be exposed to fumes, odors, or other pulmonary irritants, loud noise, unprotected heights, tasting or smelling, or extreme heat and cold.   The ALJ further determined that Plaintiff was able to handle limited levels of light and that Plaintiff could use a computer.

At step four, the ALJ found that Plaintiff could return to her prior employment as a medical coder.   The ALJ purpotedly relied, in part, on the testimony of a VE who testified on matters related to Plaintiff's age, education, and work history. After considering the VE's testimony and the record presented, the ALJ concluded that Plaintiff was not disabled.   The ALJ did not make an alternative finding at step five.

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, the court is not to "reweigh the evidence" or "decide the facts anew."   *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th

Cir. 2011) (citing another case).   Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and we must defer to the ALJ's decision even if the evidence may preponderate against it.   *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g).   However, no presumption of validity attaches to the Commissioner's conclusions of law.   *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).   The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied.   *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).   In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding.   *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).   It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence.   *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, a court is not to re-weigh the evidence anew. Rather, a court is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not

disabled.   If a decision is supported by substantial evidence, we must affirm even if the proof preponderates against it.   Therefore, a court's responsibility is to ensure that the proper legal standards were applied.   *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## III.      ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The claimant bears the burden of producing evidence that proves he or she meets this statutory definition.   "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)).   The steps are followed in order to determine if the claimant is disabled.   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."   *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation and citation omitted).

The ALJ must first determine whether the claimant is presently employed.   If so, a finding of non-disability is made and the inquiry ends.   *See* 20 C.F.R. §

404.1520(b).   In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.   If the ALJ does not make such a finding, then the inquiry ends.   *See* 20 C.F.R. § 404.1520(c).   At step three, the ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work.   *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work.").   If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded.   *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work.   If the claimant cannot perform past relevant work, then a prima facie case of disability is established.   The ALJ assesses a claimant's RFC at this stage, based on all of the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See* 20 C.F.R. § 416.945(a)(1).   A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, the ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis.   Only upon the conclusion of this function-by-function analysis may an ALJ express a claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy. This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform.   *See* 20 C.F.R. § 404.1520(e)-(f).

On appeal, Plaintiff challenges the ALJ's decision in three ways: (1) that the ALJ's evaluation of the medical evidence is erroneous, (2) that the ALJ's assessment of Plaintiff's symptoms lacks substantial evidence, and (3) that the ALJ failed to consider relevant considerations in assessing Plaintiff's RFC.   We will consider each argument in turn.

## A.   *Whether Substantial Evidence Supports the Weight Assigned to the Medical Opinions*

Plaintiff raises several arguments as to why the ALJ's evaluation of the medical evidence was erroneous.   Plaintiff contends that the ALJ failed to articulate the weight assigned to Plaintiff's treating sources because there were no contradictory opinions in the record.   Plaintiff also claims that, for the opinions where a weight was assigned, the ALJ merely included vague and conclusory sentences.   Because the ALJ committed several errors in her evaluation of the medical opinions, Plaintiff maintains that the decision lacks substantial evidence.

7

An ALJ evaluates several factors when determining how much weight to assign a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization.   20 C.F.R. §§ 404.1527(c), 416.927(c).   These factors apply to both examining and non-examining doctors. *See id*.   Absent good cause, the ALJ must give a treating[4] physician's opinion substantial or considerable weight.   *See id.* (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.   "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons."   *Id.*   Furthermore, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore.   *See Winschel*, 631 F.3d at 1179 (reiterating that without a statement from the ALJ, a reviewing court would be unable to determine whether the disability decision was rational and supported by substantial evidence).   The opinion of a one-time examiner is not entitled to deference or special consideration.

---

[4]    A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."   20 C.F.R. § 404.1502.

*See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[T]he ALJ was not required to defer to Dr. Vrochopoulos's opinion since he was a psychologist who only examined Denomme on a single occasion and did not treat her.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

The opinion of a non-examining physician is entitled to little weight when it contradicts the opinion of an examining physician. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988). However, "[w]here a non-examining physician's report includes information that is not contained in the examining physicians' reports, but does not contradict the examining physicians' reports, the ALJ does not err in relying on the non-examining physician's report to the extent it contains non-contradictory information." *Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) (citing *Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir. 1991)). The weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See* 20 C.F.R. § 404.1527(d)(3)–(4); *see also Crawford,* 363 F.3d at 1160 (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining physician). The more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion. *See* 20 C.F.R. § 404.1527(d)(4).

Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987). Absent such a statement, a reviewing

court cannot determine whether the ultimate decision is supported by substantial evidence. *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer*, 395 F.3d at 1211. This means that if an ALJ makes clear that he or she considered a physician's opinion, and that the findings were consistent with the opinion, then there is no harmful error. *Colon v. Colvin*, 600 F. App'x 867, 870 (11th Cir. 2016). In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014).

### *(1) Dr. Yelena Vidgop*

Plaintiff's initial argument is that the ALJ's decision lacks substantial evidence because it devotes only five sentences to Dr. Vidgop and fails to explain the reasons for assigning her medical opinions little weight. Plaintiff argues, for example, that the decision omits any reference to Plaintiff's diagnoses, treatment methods, medication treatments, the frequency duration of Plaintiff's migraine headaches, and many other relevant considerations. Plaintiff takes specific issue with the ALJ's remark that the opinion should be given little weight because it "is

10

conclusory and inconsistent with contemporaneous treatment notes." [Tr. 16]. Because the ALJ devoted no more than five sentences to Dr. Vidgop's medical opinions and failed to consider the entire record, Plaintiff suggests that the ALJ committed reversible error and that the decision to assign Dr. Vidgop little weight lacks substantial evidence.

We agree with Plaintiff that the ALJ's decision does not dedicate many sentences to the consideration of Dr. Vidgop.   The decision merely states that Dr. Vidgop reported that Plaintiff's headaches improved with Botox, that treatment notes showed that Plaintiff had normal orientation and memory, that Plaintiff's cranial nerves were grossly intact, and that an MRI revealed Plaintiff's brain to be within normal limits.   The ALJ's decision also claims that Dr. Vidgop's opinions were conclusory and inconsistent with contemporaneous treatment notes. Noticeably, however, the ALJ did not go into detail on Dr. Vidgop's opinions.   The ALJ only made a generalized statement that the opinions were conclusory and inconsistent while referencing an exhibit in the record as support for that assertion. Plaintiff therefore has a viable argument that the decision may lack substantial evidence.

However, based on the ALJ's consideration of Dr. Vidgop and the referenced exhibit that the ALJ relied upon, substantial evidence supports the decision to assign Dr. Vidgop little weight.   The ALJ cited, for example, exhibit 20F as support that Dr. Vidgop's opinions were conclusory and inconsistent.   While the ALJ did not provide detailed reasons for her conclusion, the exhibit supports the ALJ's determination.

11

The exhibit relates to a form that Dr. Vidgop completed on August 11, 2016.   [Tr. 722-723].   Dr. Vidgop opined that Plaintiff could not work while suffering from headaches, but never gave any reasons for that opinion.   Instead, Dr. Vidgop noted Plaintiff's diagnosis without any supporting rationale.

The same is true for a form that Dr. Vidgop completed on July 7, 2016, where she summarily checked boxes to show that Plaintiff had migraine headaches several times a week.   Dr. Vidgop failed to provide any reasons for her opinions and merely noted that Plaintiff's headaches were debilitating, and that Plaintiff's symptoms improved with Botox.   [Tr. 695-697].   Dr. Vidgop's repeated use of a generic check-off form is a sufficient reason to assign her opinions little weight.[5]   Indeed, "courts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."   *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (citing *Spencer*, 765 F.2d at 1094 (rejecting opinion from a non-examining physician who merely checked boxes on a form without providing any explanation for

---

[5]      The Eleventh Circuit determined in *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) that the use of a check box format "is not a basis, in and of itself, [to] discount them as conclusory."   *Schink* is of less relevance in this case because we do not rely solely on the use of a check-off form in finding that the ALJ had good cause to assign the opinions little weight.   We also rely on the conclusory nature of the treatment notes and their internal inconsistencies.   *Schink* was also examining a check box form in the context of an ALJ using inconsistent reasons for giving great weight to one doctor when the same deficiencies were present to a doctor given little weight – neither of which is present in this case.   In any event, to the extent that *Schink* is inconsistent with *Spencer*, the prior decision in *Spencer* should control.   *See Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 837 (11th Cir. 2004) ("Under the prior panel rule, we are bound by the holdings of earlier panels unless and until they are clearly overruled en banc or by the Supreme Court.").

his conclusions)); *see also Mason v. Shalala,* 994 F.2d 1058, 1065 (3rd Cir. 1993) (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). While these forms are admissible, "they are [generally] entitled to little weight and do not constitute 'substantial evidence' on the record as a whole." *O'Leary v. Schweiker,* 710 F.2d 1334, 1341 (8th Cir. 1983); *Teague v. Astrue,* 638 F.3d 611, 616 (8th Cir. 2011) ("Given that the "check-off form" did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the [form] was entitled to "little evidentiary weight."); *Mason,* 994 F.2d at 1065 (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best")).

This means that, while the ALJ did not explain specifically how Dr. Vidgop's opinions were conclusory, the reasons for that finding are obvious because the opinions "contain[] no specific limitations to any work-related functional limitation, such as walking, lifting, standing, or sitting." *Chappel v. Comm'r of Soc. Sec.*, 2009 WL 2460757 at *5 (M.D. Fla. Aug. 10, 2009).[6] In other words, the ALJ had good cause to discredit Dr. Vidgop because "[a] treating physician's report 'may be

---

[6]   Plaintiff suggests that – while two of Dr. Vidgop's opinions might have been conclusory – another medical record in August 2016 [Tr. 700-704] is more comprehensive. Even if we ignored the ALJ's reasons as to Dr. Vidgop's other medical records, Plaintiff's argument as to the August 2016 opinion is equally conclusory because it merely states that Plaintiff suffers from chronic migraines. Dr. Vidgop then includes a paragraph on her impressions of Plaintiff's condition but it also falls victim to the same problem because it only recites Plaintiff's symptoms without a detailed assessment or diagnosis. Therefore, substantial evidence supports the ALJ's decision because each of Dr. Vidgop's opinions are conclusory.

discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'" *Crawford*, 363 F.3d at 1159 (quoting *Edwards*, 937 F.2d at 583-84 (11th Cir. 1991)); *see also Cummings*, 165 F. App'x at 811 ("[T]he report[ ] of the treating physician . . . do[es] not contain objective findings to support [its] conclusions, the ALJ's failure to accord weight to [its] conclusions is supported by substantial evidence and based on correct legal standards."). Therefore, given that there is more than a scintilla of evidence to support the ALJ's finding that Dr. Vidgop's opinions were conclusory and inconsistent with her own treatment notes, substantial evidence supports the decision to assign her opinions little weight. *See Retherford v. Berryhill*, 2019 WL 400063, at *14 (N.D. Fla. Jan. 31, 2019) ("Brief and conclusory statements that are not supported by medical findings, *even if made by a treating physician*, are not persuasive evidence of disability.") (citing *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980)).

### (2) Dr. Alina Nodal

The next argument is that the ALJ erred in assigning Dr. Nodal's opinions little weight. Dr. Nodal is a treating psychiatrist and psychotherapist who began treating Plaintiff in November 2015. Dr. Nodal opined that Plaintiff had a poor ability to make occupational, performance, and personal-social adjustments. Dr. Nodal also found that Plaintiff's ability to behave in an emotionally stable manner fluctuates, that Plaintiff was released from her prior job for not following instructions, and that Plaintiff's intellectual ability was compromised due to a severe

emotional condition.

Plaintiff complains (1) that the ALJ evaluated Dr. Nodal's opinion in just two sentences, (2) that the reasons provided in support of the decision were false, and (3) that the ALJ erred when she found that Plaintiff's bipolar disorder was a non-severe impairment.   Plaintiff also argues that the ALJ failed to specify what evidence that Dr. Nodal relied heavily on with respect to Plaintiff's self-reports and that the ALJ erred when she ignored Dr. Nodal's medical assessments.   In addition, Plaintiff relies on other evidence in the record where Dr. Nodal opined that Plaintiff has a poor ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, deal with work stress, function independently, and maintain attention/concentration.   Plaintiff therefore concludes that the ALJ's decision to assign Dr. Nodal little weight lacks substantial evidence because it ignores the record presented.

Plaintiff's argument is unpersuasive because, although the ALJ did not provide detailed reasons for discrediting Dr. Nodal's opinions, substantial evidence supports the ALJ's decision.   The ALJ stated, for instance, that Dr. Nodal was entitled to little weight because many of Dr. Nodal's opinions relied on Plaintiff's self-reported symptoms.   While Plaintiff complains that the ALJ failed to reference specific documents in the record to support that finding, Plaintiff fails to rely on any authority that imposes that requirement.[7]   The ALJ also found that Dr. Nodal's

---

[7]     Plaintiff's argument is factually incorrect because the ALJ specifically referenced exhibits 15F and 19F in support of her decision to assign Dr. Nodal little

opinions were not compelling because Plaintiff's mental health condition improved with the help of psychiatric treatment.   Plaintiff reported, for example, that she felt stable in January 2016 and that her mental condition slowly improved.   By March 2016, Plaintiff's condition had stabilized, and she was only mildly anxious and depressed.   [Tr. 691].   This means that Plaintiff's bipolar symptoms waned during Dr. Nodal's treatment sessions and that it led to an adjustment in Plaintiff's medication.

Plaintiff, of course, disagrees with the ALJ's decision and maintains that the ALJ mischaracterized significant clinical findings and failed to consider the entire record.   But, Plaintiff's argument is unavailing because it is directed at *how* the ALJ weighed the evidence – not whether substantial evidence supports the conclusion reached.   Indeed, after an independent review of the decision and the underlying record, the treatment notes support the ALJ's decision because, while Plaintiff continued to suffer from her impairments, there is evidence that Plaintiff improved in her thought processes, sleeping conditions, mental symptoms, mood, eye contact, and orientation.   This does not mean, however, that the evidence points in only one direction.   It merely means that there is more than a scintilla of evidence to support the ALJ's conclusion that Dr. Nodal's opinions are contradicted, in part, with

_____

weight.   The exhibits also show that they may be discredited for some of the same reasons as Dr. Vidgop.   That is, Dr. Nodal's opinions are included in check-off forms with nothing more than conclusory remarks.   Because Dr. Nodal's opinions fail to provide any persuasive evidence of the validity of her opinions, they were entitled to little weight for this additional reason.   *See Fell v. Colvin*, 2014 WL 4373212, at *4 (N.D. Fla. Sept. 3, 2014) ("Because Dr. Fairleigh's opinion consists of conclusory statements expressed on a pre-printed check-off form, it is entitled to little weight.").

16

Plaintiff's continued improvement under Dr. Nodal's care.   Because we cannot reweigh the evidence presented, nor can we substitute our discretion for that of the ALJ – even if the evidence may preponderate against it – we cannot conclude that the ALJ's decision lacks substantial evidence.   *See, e.g., Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 658 (11th Cir. 2013) ("These inconsistencies gave the ALJ good cause to accord less weight to Hernandez's treating physicians.").

### *(3) Ms. Odalys Valencia*

The third treating medical source at issue is Ms. Valencia.   Plaintiff suggests that the ALJ erred when she assigned Ms. Valencia's opinion little weight because Ms. Valencia opined that Plaintiff has a poor ability to make occupational, performance, and personal-social adjustments.   Ms. Valencia also found that Plaintiff could not perform any sustained work activity and that Plaintiff suffered from repeated episodes of decompensation.   For these reasons, Plaintiff believes that the ALJ had no good cause to give Ms. Valencia's opinions less weight than other physicians in the record.

Plaintiff's argument is unpersuasive, in part, because, as a clinical social worker, Ms. Valencia is not an acceptable medical source.   *See Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017) ("'Other sources' include medical sources, who are not "acceptable medical sources," such as licensed clinical social workers.") (citing SSR 06-03p, 2006 WL 2329939 at *2 (S.S.A. Aug. 9, 2006)). An acceptable medical source is evidence from a physician or psychologist that can establish the existence of a medically determinable impairment.   *See* 20 C.F.R. §

416.913(a) ("[A]cceptable medical sources" include physicians, psychologists, and other medical professionals").

Ms. Valencia's opinion is commonly referred to as an "other medical source" because it may show the severity of an individual's impairment and how it affects the individual's ability to function. The difference between the two is that evidence from "other medical sources" cannot establish the existence of a medically determinable impairment as opposed to information from an acceptable medical source. *See McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016) ("Because a social worker is not listed as an acceptable source, a social worker's opinion cannot be considered in determining the existence of an impairment.") (citing *Crawford*, 363 F.3d at 1160 (stating that because a chiropractor "is not considered an 'acceptable source'" under the applicable regulations, "his opinion cannot establish the existence of an impairment")). An ALJ may therefore use evidence from "other medical sources" to show the severity (but not the existence) of an impairment.

To that end, Plaintiff complains that the ALJ assigned Ms. Valencia's opinion little weight. But, as a clinic social worker and an "other medical source," the ALJ was only "required to consider [Ms. Valencia's] opinion, [the ALJ] was not required to give it significant weight." *Anteau*, 708 F. App'x at 613; *see also Levie v. Berryhill*, 2018 WL 6434384, at *2 (11th Cir. Dec. 7, 2018) ("[T]he ALJ was not required to give [the] notes [of a social worker and therapist] any special consideration."). This means that "[w]hile 'other sources' can provide insight into the severity of a

18

claimant's impairments and how the impairments affect his ability to function, the Commission is not required to accept the conclusion from a non-acceptable medical source and may accord such weight as he deems appropriate based upon the medical evidence of record." *Ryan v. Colvin*, 2013 WL 12161866, at *4 (M.D. Fla. Sept. 19, 2013).

Here, the ALJ considered Ms. Valencia's opinion and, after reviewing it, gave it little weight because she did not submit any treatment notes to support her opinions and she based it heavily on Plaintiff's own reported symptoms. This alone gave the ALJ good cause to discredit Ms. Valencia's opinion. *See Crawford,* 363 F.3d at 1159 (explaining that even a treating physician's opinion may be discounted if "it is not accompanied by objective medical evidence or is wholly conclusory" (quotation marks omitted)); *see also* SSR 06–03p, 2006 WL 2329939, at *4 (stating that factors in considering "other sources" evidence, such as other medical source opinions, include "[h]ow consistent the opinion is with other evidence," the "degree to which the source presents relevant evidence to support an opinion," and "[h]ow well the source explains the opinion").

Not to be deterred, Plaintiff suggests that the ALJ was required to examine Ms. Valencia as if she was an acceptable medical source. This argument is unavailing because Ms. Valencia, as a clinical social worker, is not entitled to any substantial weight – meaning social workers are considered the same as any other lay witness. *See Rusten v. Comm'r of Soc. Sec. Admin.*, 468 F. App'x 717, 720 (9th Cir. 2012) ("An ALJ can give less weight to an 'other source' medical opinion by

19

providing 'reasons germane to each witness for doing so.'") (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).   Because Ms. Valencia's opinion constitutes an "other medical source," and the ALJ provided a credible reason for assigning it little weight, Plaintiff's argument misses the mark.

### (4) Dr. Norberto Pedroso

The final treating physician is Dr. Norberto Pedroso.   Plaintiff argues that the ALJ devoted only one sentence to Dr. Pedroso's opinions and that the ALJ failed to assign him any weight.   There is no dispute that the ALJ only mentioned Dr. Pedroso *once* in the decision and that there is no weight assigned to how the ALJ considered Dr. Pedroso's opinions.   However, the failure to accord specific weight to the opinion of a treating physician does not always constitute reversible error.   The Eleventh Circuit has held that "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Wright v. Barnhart,* 153 F. App'x. 678, 684 (11th Cir. 2005); *see Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983).   Accordingly, harmless error exists "when the ALJ failed to discuss a treating physician's opinion, but even giving controlling weight to the opinion would not have changed the outcome." *Rodgers v. Astrue,* 2009 WL 513757, *4 (M.D. Fla. Mar. 2, 2009) (citing *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989) (finding that no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result); *Ward v. Comm'r of Soc. Sec.,* 211 F.3d 652, 656 (1st

20

Cir. 2000) (holding that while an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise)).

Here, the ALJ's failure to assign any weight to Dr. Pedroso was harmless because his opinions suffered from many of the same defects as the other treating physicians.  Dr. Pedroso treated Plaintiff from March 17, 2014 through December 23, 2016 and he included notes each time he met with Plaintiff.   But, Dr. Pedroso's notes are far too conclusory because he only gave a few brief descriptions of a physical exam then assessed Plaintiff with various ailments (i.e. migraines, acute sinusitis), and concluded with a list of medications.   There is no explanation as to how Dr. Pedroso reached his diagnosis nor any specificity as to Plaintiff's condition aside from the brief descriptions provided as to Plaintiff's physical condition.   This means that, while Dr. Pedroso was a treating physician and the ALJ should have assigned him some level of weight, the ALJ's failure to do so is harmless because Dr. Pedroso's opinions are conclusory and unpersuasive evidence of a disability.   Accordingly, the failure to assign Dr. Pedroso any weight is harmless error because, even if we assigned controlling weight to his opinions, they would not change the outcome.

**B.**     **_Whether the ALJ Failed to Assess Plaintiff's Symptoms and Limitations_**

The next argument is that the ALJ failed to assess Plaintiff's symptoms and allegations of pain.   More specifically, Plaintiff contends that the ALJ provided only three sentences related to Plaintiff's symptoms and that this represents an egregious departure in evaluating the evidence presented.   Plaintiff also claims that her

testimony was consistent with her treating physicians and that her allegations of disabling impairments should *not* have been so quickly disregarded. For these reasons, Plaintiff concludes that the ALJ's failure to present a coherent assessment of Plaintiff's symptoms and limitations requires remand.

The Social Security regulations provide that statements about pain or other symptoms will not alone establish that a claimant is disabled. *See* 20 C.F.R. § 404.1529(a). "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ is not required to accept a claimant's subjective allegations of pain/symptoms and may properly consider the credibility of a claimant when making a determination of disability. *See id.* at 1225-26. If an ALJ rejects a claimant's allegations of pain, "he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).

A "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562. If a disability is based on subjective evidence and a credibility determination is made against the claimant, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler*,

720 F.2d 1251, 1255 (11th Cir. 1983).   The ALJ is not required to cite "particular phrases or formulations but it cannot merely be a broad rejection" that prevents a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *See Foote*, 67 F.3d at 1561; *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987) ("Broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable us to conclude that the ALJ considered her medical condition as a whole.").

In reaching a determination, the ALJ may consider the following factors: (1) treatment history, (2) the type, dosage, effectiveness, and side effects of any medications taken, (3) treatment taken other than medications, (4) any other measures used for relief of pain or other symptoms, (5) any precipitating and aggravating factors, (6) medical source opinions, (7) statements by the claimant or others about pain and other symptoms, (8) information about prior work, and (9) evidence of daily activities.  *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). But, the ALJ is not required to discuss every aforementioned factor.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) ("In sum, the ALJ considered Dyer's activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent with his testimony and the medical record. The ALJ thus adequately explained his reasons").

We agree, in part, that the ALJ did not provide detailed reasons as to why Plaintiff's allegations were not entirely credible.   The ALJ only stated, that "the

claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."   [Tr. 15]. However, the ALJ's failure to provide explicit reasons is not fatal because the Court can easily infer the ALJ's reasons for the assessment.   The ALJ provided, for instance, a comprehensive review of Plaintiff's testimony and relied on neurological examinations, mental status examinations, and brain images to find that Plaintiff's allegations did not support a finding of disabling limitations.   And "[f]rom this discussion, we can clearly infer what testimony from [Plaintiff] the ALJ found lacking in credibility and why it was discredited."   *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 712 (11th Cir. 2015).   We therefore conclude that the ALJ committed no harmful error when reviewing Plaintiff's testimony because substantial evidence supports the ALJ's determination that Plaintiff's allegations were not entirely credible.

**C.**     ***Whether Substantial Evidence Supports the RFC Finding***

Plaintiff's next argument is that the ALJ committed several errors with respect to Plaintiff's RFC.   Plaintiff argues that the ALJ's decision must be overturned because (1) the ALJ devoted less than one page of her decision to the RFC, (2) the VE erred in testifying that the job of a medical coder was sedentary because the Dictionary of Occupational Titles ("DOT") describes that position as light work, (3) the ALJ's environmental restrictions precluded Plaintiff's return to work as a medical coder, (4) the VE made material errors in the consideration of

whether Plaintiff could return to her prior employment, (5) the ALJ failed to ask the VE more than one question on whether the VE's testimony was consistent with the DOT, and (6) the ALJ's finding that Plaintiff can work in limited levels of light was too vague and conflicted with the VE's earlier testimony.   We will discuss each argument in turn.

### (1) Length of RFC Analysis

We begin with Plaintiff's initial argument that the ALJ's decision is erroneous because the ALJ spent less than one page examining Plaintiff's RFC. Plaintiff's argument falls flat, however, because Plaintiff failed to rely on any authority – and we can find none – where there is a required page limit for a claimant's RFC.   If Plaintiff had argued that the RFC omitted critical information needed to make an informed decision and pointed out those specific defects, her contention would be far stronger.   However, as presented, Plaintiff merely advances a generic argument that the RFC analysis is too short.   Because Plaintiff's argument is directed solely at the *length* of the decision and there is nothing that imposes a page requirement on the consideration of a claimant's RFC, we cannot conclude that the ALJ committed reversible error.

### (2) Sedentary Work

Plaintiff's next argument is that the VE erred when testifying that the job of a medical coder was sedentary because the DOT describes that position as light work. "To support a conclusion that the claimant is able to return to his past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability

to perform them in spite of his impairments." *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236, 239 (11th Cir. 2011) (citing *Lucas v. Sullivan,* 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)).   This means that "[t]he burden is on the claimant to show that he can no longer perform his past relevant work as he actually performed it, and cannot perform work of that same kind." *Colon*, 411 F. App'x at 239 (citing *Jackson v. Bowen,* 801 F.2d 1291, 1293–94 (11th Cir. 1986)).

There is no dispute that the DOT describes the job of a medical coder as light work.   Plaintiff's argument misses the mark, however, because Plaintiff testified that her prior employment as a medical coder was sedentary as performed:

> Q: Okay. Again, was this a sit-down type of job?
> A: Sit-down, yes.
> Q: --where you didn't have to do any heavy lifting?
> A: No lifting, just sitting down, coding from a book or computer.

[Tr. 64].   Toward the latter part of the hearing, the VE questioned Plaintiff about her past relevant work and Plaintiff confirmed that her work as a medical coder was a sit-down job with no lifting.   [Tr. 78].   This means, that even though the DOT describes a generic medical coder position as involving light work, Plaintiff testified that her prior position fell short of that threshold.   Therefore, to the extent the ALJ committed any error as to Plaintiff's past relevant work, the error was harmless because the RFC did not preclude Plaintiff from performing a job that she performed in the past.   *See, e.g.*, *Colon*, 411 F. App'x at 239 (11th Cir. 2011) ("Mr. Colon's testimony and work history reports revealed that his former work as a gas station attendant required him only to pump gas and did not require him to lift or carry

anything.   So, the weight restrictions imposed by the RFC did not preclude him from performing this job as he actually performed it in the past.").

### (3) Environmental Restrictions

The third argument is whether environmental restrictions in the RFC – including smelling, loud noise, unprotected heights, or extreme heat/cold – preclude Plaintiff from performing prior work as a medical coder.   Plaintiff contends, without any explanation, that Social Security Ruling 85-15 requires that the limitations the ALJ identified preclude Plaintiff's return to her prior employment.[8]   Plaintiff fails, however, to support her argument with any authority.   Plaintiff merely references Social Security Ruling 85-15 and summarily concludes that the limitations therein preclude all prior work.   Because Plaintiff fails to provide any other reasons or authority in support of her argument, this contention falls flat.

In putting aside that failure, Plaintiff's argument is misplaced because Social Security Ruling 85-15 relates to the application of the Medical-Vocational Guidelines (i.e. the grids) as a framework for evaluating non-exertional impairments at step five of the sequential process.   There is nothing in Social Security Ruling 85-15 that concerns the ALJ's findings at step four of the sequential process as it relates to a claimant's past relevant work.   And Plaintiff has failed to show otherwise how the application of the grids support a finding of disability.   We therefore conclude that

---

[8]      Social Security Rulings are agency rulings issued to clarify regulations and policy and are binding upon all components of the Social Security Administration. *See Sullivan v. Zebley,* 493 U.S. 521, 530 (1990).   The reviewing court should uphold a ruling unless it is "clearly erroneous or inconsistent with the law." *Pass v. Chater,* 65 F.3d 1200, 1204 (4th Cir. 1995).

Plaintiff's argument is incomplete and that the authority relied on does not support her argument that she should be precluded from all prior employment.

### (4) Specific Vocational Preparation

Plaintiff's fourth argument is that there is no substantial evidence in support of the decision because the VE testified incorrectly that Plaintiff's prior job as a medical coder constitutes sedentary work with a specific vocational preparation ("SVP") rating of 7 when the DOT states that this job has an SVP rating of 6. An SVP rating refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, Dictionary of Occupational Titles, Appendix C, § II (4th ed., rev. 1991). SVP ratings are included on a scale from 1 to 9 with 6 representing jobs that take over one year up to and including two years to achieve average performance. On the other hand, an SVP rating of 7 represents a period of over two years and up to and including four years to reach average performance.

Plaintiff's argument fails because, although the VE testified that a medical coder position constitutes an SVP rating of 7, Plaintiff fails to show how this prejudiced the ALJ's decision. In other words, Plaintiff identifies an inaccuracy, but that inaccuracy means that a medical coder position was *less* demanding than the ALJ contemplated. This means that, if anything, the VE's error helped Plaintiff in her argument that she was disabled because, in finding that Plaintiff could return to her prior employment as a medical coder, the threshold was lower than the ALJ

realized. In effect, this undermines Plaintiff's argument because it supports the ALJ's conclusion that Plaintiff can return to work as a medical coder. Because Plaintiff fails to show how the VE's error was prejudicial, this argument lacks merit.[9]

### (5) A Single Question about the DOT

Plaintiff's fifth argument is that the ALJ failed to comply with Social Security Ruling 004-p because the ALJ asked the VE only *one* question as to whether the VE's testimony was consistent with the DOT. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) ("[T]he ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence."). This argument lacks merit, however, because Plaintiff fails to rely on any authority that requires an ALJ to ask the VE more than one question as to whether the VE's testimony is consistent with the ALJ.

Plaintiff then suggests that the ALJ failed to resolve any inconsistencies between the VE's testimony and the DOT. But, Plaintiff fails to direct the Court to anything in the record that highlights an inconsistency that the ALJ needed to resolve as to the DOT. When the ALJ questioned the VE as to whether there were

---

[9]      Substantial evidence also supports the ALJ's decision because Plaintiff took a medical coder course after college and worked for nearly three years in the field learning how to do the job. Thus, substantial evidence supports the ALJ's finding that Plaintiff is not disabled irrespective of the SVP level being a 6 or 7.

any conflicts with the DOT, the ALJ waited until the end of the hearing and the VE

responded that there were no longer any conflicts:

> Q: Has your testimony today been consistent with the DOT, with the
> exceptions of the things you've already identified as being within your
> experience?
> A: Yes.

[D.E. 89].   While an ALJ has an affirmative duty to identify and resolve any

apparent conflicts with the DOT, Plaintiff has failed to identify any conflicts that

required further consideration. [10]  Because Plaintiff's argument is devoid of any

relevant legal authority that requires the ALJ to question the VE more than once as

to whether the VE's testimony conflicts with the DOT and Plaintiff fails to explain

any other inconsistency that the ALJ needed to resolve, the ALJ complied with the

requirements of Social Security Ruling 004-p.

### (6) Levels of Light

The final issue is whether the ALJ erred when she determined that Plaintiff

can work in conditions with limited levels of light.   Plaintiff argues that this is

erroneous because the ALJ failed to quantitatively define the levels of light that

Plaintiff could tolerate in violation of Social Security Ruling 96-8p.   But, Plaintiff's

contention rings hollow because she fails to rely on a single case that supports her

---

[10]    Plaintiff argues, in passing, that the ALJ failed to present the VE with a
hypothetical that includes all of the factors in the RFC.   [D.E. 20] ("[T]here does not
appear to be a hypothetical that the ALJ posited to the VE that included all of the
factors in the ALJ's RFC").   Plaintiff fails, however, to identify what the ALJ failed
to do.   Plaintiff merely suggests that there may be something missing in the RFC.
As such, we need not consider this argument because it is incomplete, and it merely
raises a suspicion that the ALJ failed to present sufficient hypotheticals to the VE.

position. Plaintiff's argument is also unpersuasive because courts have repeatedly found that – while a more definite statement concerning a claimant's RFC is helpful – "the lack thereof is not fatal to the ALJ's RFC determination." *Singleton v. Comm'r of Soc. Secu.*, 2013 WL 5236678, at *3 (M.D. Fla. Sept. 17, 2013) (citing *Barringer v. Colvin,* 2013 WL 4496326 *10 (M.D. Ala. Aug. 21, 2013) (finding no law requiring the ALJ to "precisely identify in numerical values exactly how far a claimant can walk, [or] how long he can stand"); *see also Fisher,* 869 F.2d at 2068 ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is some reason to believe that the remand might led to a different result.")). Because courts have determined that Social Security Ruling 96-8p does not require quantitative findings and Plaintiff has otherwise failed to rely on any other authority for the Court to consider, Plaintiff's initial argument misses the mark.

The more difficult question to answer is whether the ALJ erred when she determined that Plaintiff's RFC includes the ability to "handle some level of light." [Tr. 15]. Plaintiff suggests that the ALJ's RFC determination lacks substantial evidence because the VE testified that Plaintiff could not return to her prior employment:

> Q: -- if the individual was also limited in exposure to florescent lighting, such that it was at only a frequent level, would that individual be able to perform the claimant's past work?
> A: Well, in these office jobs, I mean, that – if the lighting is, in fact, the lighting is florescent, it would be constant. So, I would have to rule out the jobs.

[Tr. 80].

The Government claims, on the other hand, that Plaintiff's argument is misplaced because the ALJ later reframed her hypothetical to focus on light intensity – as opposed to light duration – and that the VE ultimately determined that the performance of a medical coder position "would still be okay."   [Tr. 84].   The problem with the Government's position is that the ALJ never made an explicit distinction between light intensity and light duration.   The Government is merely reading that distinction into the record.   If we assume, for the sake of argument, that the Government's approach is permissible, the argument fails for an entirely separate reason because the RFC determination is unsupported in the record.   The Government hangs its hat on the VE's statement that a medical coder position "would still be okay" to perform.   Yet, that answer was in direct response to a discussion about the level of interaction required for a medical coder position – not the level of light permissible in the workplace.

Undeterred, the Government suggests that the VE's answer relates to an earlier question that the ALJ asked on the levels of light that Plaintiff could withstand. But, once again, there is nothing in the record to support that leap of faith.   The only reasonable inference is that the VE was commenting on the level of interaction in the workplace:

> Q: Does that clarify?
> A: Yes.
> Q. Okay.
> A: So, if the limited interaction is meaning occasional –
> Q: Yes.

> A: -- like none, zero to two and a half, okay, so that, for the medical coder, that job would still be okay. Of course, we would rule out the administrative clerk position because of the increased interaction with others.

[Tr. 84].

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'"  *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 F. App'x 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. Sept. 9, 2010)  ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).

Here, there is no link between the ALJ's RFC determination and the evidence in the record that Plaintiff can withstand some levels of light as a medical coder.   If anything, the record shows that Plaintiff *cannot* return to her prior employment as the VE explicitly stated in response to an earlier question.   And even if the Court

agreed that an inference could be drawn as to light intensity, light duration, and levels of light, the decision could not stand because the Court would be engaging in guesswork to make that connection. *See, e.g.*, *Ingram v. Commissioner of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) ("The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991) (finding that the ALJ errs as a matter of law if the written decision lacks enough information for the court to review the ALJ's findings to ensure that proper legal standards were employed and that the factual findings are based on substantial evidence).

We therefore have no choice but to find that the ALJ committed harmful error because – if the RFC lacks substantial evidence – the ALJ's step four finding is erroneous as to whether Plaintiff can return to her prior employment. The ALJ also did not make an alternative step five finding related to other available jobs existing in the national economy. All that we are left with is a decision that includes an RFC determination, but nothing to support that finding given the lack of clarity and discussion between the ALJ and the VE. *See Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 989 (11th Cir. 2013) ("We conclude that a remand is necessary so that the ALJ can reconsider her assessment of Hickel's RFC in light of Dr. Eastridge's opinion on these matters and then re-examine, at steps four and five, whether there is work Hickel can perform."); *Somogy v. Comm'r of Soc. Sec.*, 366 F.

App'x 56, 65 (11th Cir. 2010) (reversing ALJ decision because the RFC determination lacked substantial evidence).

Whether the RFC determination is either omitted in the decision altogether, or so attenuated that that it cannot be cured or supplemented with the Commissioner's response, the disposition remains the same: this case should be remanded for further fact-finding. *See Beasley v. Berryhill*, 2017 WL 4172953, at *5 (M.D. Ala. Sept. 20, 2017) ("In the absence of specific findings in the ALJ's written decision, the court will not speculate as to what the ALJ might have determined on the evidence of record"). Accordingly, this case should be remanded to allow the parties to present additional evidence on Plaintiff's alleged disability and to allow the ALJ to render a decision that is fully supported by substantial evidence. For these reasons, Plaintiff's motion for summary judgment [D.E. 17] should be **GRANTED**, Defendant's motion for summary judgment [D.E. 20] should be **DENIED**, and this case should be **REMANDED** for further proceedings.

## *IV.    CONCLUSION*

Substantial evidence does not support the ALJ's findings as noted in the unfavorable decision. The ALJ committed reversible error with respect to Plaintiff's RFC that prejudiced Plaintiff and was harmless. For the foregoing reasons, Plaintiff's motion for summary judgment [D.E. 20] should be **GRANTED**, Defendant's motion for summary judgment [D.E. 21] should be **DENIED**, and the this case should be **REMANDED** for further proceedings.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 24th day of October, 2019.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge